#27001-a-JKK
**2014 S.D. 81**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

OAKLEY BERNARD ENGESSER,                    Petitioner and Appellee,


    v.


DARIN YOUNG, Warden,
South Dakota State Penitentiary,            Respondent and Appellant.


* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
MEADE COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE WARREN G. JOHNSON
Judge

* * * *

RONALD A. PARSONS, JR.
DELIA M. DRULEY of
Johnson, Heidepriem & Abdallah, LLP
Sioux Falls, South Dakota


    and


MICHAEL J. BUTLER
Sioux Falls, South Dakota                   Attorneys for petitioner
                                         and appellee.


MARTY J. JACKLEY
Attorney General

PAUL S. SWEDLUND
Assistant Attorney General
Pierre, South Dakota                        Attorneys for respondent
                                         and appellant.


* * * *

                                      ARGUED OCTOBER 6, 2014


                                      OPINION FILED **11/12/14**

#27001

KONENKAMP, Justice

[¶1.]　　　　In this habeas proceeding, the circuit court ruled that the petitioner established clearly and convincingly that newly discovered evidence, if proven and viewed in light of all the other evidence, would establish that no reasonable juror would have convicted him.  The court ordered a new trial, and the State appeals.

## Background

[¶2.]　　　　In 2001, a jury convicted Oakley "Bernie" Engesser of vehicular homicide and two counts of vehicular battery.  The sole issue at the trial was whether Engesser or the deceased, Dorothy Finley, was driving her Corvette when it crashed into a minivan on Interstate 90.  Neither Engesser nor Finley was wearing a seatbelt and both had been drinking alcoholic beverages.  The Corvette was going "approximately 112 miles per hour when it slammed into the back of the minivan, spun off the road, and rolled several times before coming to rest on its roof in the median."  *See State v. Engesser* (*Engesser I*), 2003 S.D. 47, ¶ 6, 661 N.W.2d 739, 744.  No witness at trial testified to seeing the driver of the Corvette.  Engesser was thrown from the car, landing face down in the median.  Multiple witnesses at trial placed him between five and ten feet from the driver's side of the Corvette.  Engesser was unconscious and suffered a gash to the right side of his head.  Finley was trapped in the car on the passenger side "underneath the passenger seat, her body in line with the seat.  The upper part of Finley's body was lying over the top of the seat.  She was facing the ground.  Her feet were underneath the dash.  Her face was pointing toward the driver's side."  *Id.* ¶ 7.  The passenger side was crushed

-1-

and the window shattered, but the roof and front windshield were intact. Finley was pronounced dead at the scene.

[¶3.] At trial, the State presented evidence from Trooper Ed Fox, the lead investigator. Trooper Fox arrived on the scene after Engesser and Finley had been taken away. He obtained statements from the witnesses at the scene. No witness, however, stated specifically whether the driver was a man or woman. Nonetheless, based on the positioning of and injuries to Finley's body, as later described to Trooper Fox, he concluded that Engesser was the driver.

[¶4.] The State also offered evidence from Finley's daughter, who testified that Finley normally kept her purse at her feet when she was the passenger. The purse was found underneath the dashboard on the passenger side. The emergency room physician who treated Engesser testified that the person in the passenger seat would have suffered the most serious injuries because it was the point of impact with the minivan. Engesser suffered injuries on both sides of his body. Finley died of injuries to the right side of her body and head.

[¶5.] Engesser did not testify at trial. But the jury viewed a video recording of his interview with Trooper Fox, in which Engesser explained that he did not remember anything after leaving the Full Throttle Saloon. Although Engesser believed Finley was driving, he agreed it was possible they had switched before the accident. Engesser sought to admit hearsay evidence from his civil attorney that a witness — Sean Boyle — had told the attorney he saw Engesser and Finley leave the Full Throttle Saloon on the night of the accident, and that Finley was driving the Corvette. The court excluded the testimony. Engesser was found guilty and

sentenced. We affirmed his convictions in 2003. *Engesser I*, 2003 S.D. 47, ¶ 50, 661 N.W.2d at 756.

[¶6.] Over the next twelve years, Engesser petitioned successively for habeas corpus relief in state and federal courts. His first state habeas petition was denied, and neither the habeas court nor this Court granted his request for a certificate of probable cause to appeal. In his first petition for federal habeas corpus relief, Engesser, pro se, claimed his trial counsel was ineffective for multiple reasons. After his petition was denied, Engesser appealed and was appointed counsel. At some point after counsel was assigned, Eric Eckholm contacted Engesser's counsel and asserted that he saw a woman driving the Corvette just before the accident. In his deposition, Eckholm testified that he was in his vehicle on the shoulder of the Interstate when he saw the Corvette before it hit the minivan. Eckholm said he saw a woman in the driver's seat frantically driving and a man in the passenger seat "hanging on." He described the driver as having blonde hair that was "kind of puffy." He saw the back end of the Corvette strike the minivan and a man fly out of the passenger side. He said he walked over to the Corvette in the median and saw Finley's body underneath the overturned car. He testified that he contacted Engesser's trial attorney and first habeas counsel. Engesser's federal habeas counsel did not bring Eckholm's testimony to the attention of the district court before Engesser's first habeas petition was ultimately dismissed by a divided federal appellate panel. *See Engesser v. Dooley* (*Engesser II*), 457 F.3d 731 (8th Cir. 2006), *cert. denied*, 549 U.S. 1223, 127 S. Ct. 1284, 167 L. Ed. 2d 104 (2007).

[¶7.]    In 2006, Engesser filed a second petition for habeas relief in state court. He argued that his trial counsel and first habeas counsel were ineffective because they failed to identify and investigate two witnesses, Eckholm and Charlotte (Delaney) Fowler. Although Eckholm and Fowler were originally questioned at the scene of the accident and neither indicated that they could identify the driver, during the habeas hearing they claimed otherwise. Eckholm testified that he was standing on the shoulder of the Interstate behind his parked truck when he saw the Corvette. He was able to see that it was a woman driver because he saw bracelets and nail polish. She had blonde hair, he said, long "enough to fly in the air." Fowler testified that while she was in the driver's seat of her van parked on the shoulder of the Interstate in front of Eckholm's vehicle, she saw the Corvette travel out of control and hit the minivan. She explained that, though she told Trooper Fox on the night of the accident that she was looking at her console and did not see the Corvette hit the minivan, she in fact saw the accident. She saw a man thrown from the Corvette. In addition to Eckholm and Fowler, multiple other witnesses testified at the habeas hearing, including Trooper Fox, Engesser's trial counsel and first habeas counsel, and Engesser.

[¶8.]    The habeas court ruled that trial counsel and Engesser's first habeas counsel were ineffective for failing to identify and investigate Eckholm and Fowler, and that Engesser was prejudiced because their testimony would likely have altered the outcome of Engesser's trial. The court granted the petition and ordered a new trial. Following the court's ruling, in an apparent effort to bolster the rationale for a new trial, Engesser sought leave to reopen the proceeding to present testimony

from two additional witnesses the State disclosed after the habeas hearing. One witness, Greg Smeenk, said that he came upon the accident right after the crash. He attempted to get to the woman inside the car, but could not open the passenger-side door. He testified that he went over to the driver's side and was able to open the door. He took the woman's pulse and realized she was dead. Because he had his two daughters in the car and did not want them to see the accident, he left the scene before ever talking to law enforcement officers. The habeas court denied the motion to reopen because, at the time of Engesser's trial and first habeas petition, neither counsel could have known that Smeenk was a potential witness.

[¶9.] On appeal, we reversed because Engesser failed to prove that his first habeas counsel was ineffective in the first habeas petition. *Engesser v. Dooley* (*Engesser III*), 2008 S.D. 124, ¶ 15, 759 N.W.2d 309, 315. At that time, SDCL 21-27-16.1 (later repealed by 2012 S.D. Session Laws, chapter 118, section 6) required that a petitioner seeking successive habeas relief show "reasonable cause" for failing to bring a claim in the previous habeas petition. Reasonable cause could be established by proof that prior habeas counsel was ineffective. *See Jackson v. Weber*, 2001 S.D. 30, ¶ 11, 637 N.W.2d 19, 22.

[¶10.] Engesser's third habeas petition in state court was also denied, after which Engesser did not seek a certificate of probable cause to appeal. Engesser then requested permission to file a successive federal habeas petition with the Eighth Circuit Court of Appeals. The court authorized the "petition 'to present a new claim that counsel was ineffective because of new evidence of Engesser's factual innocence that could not have been discovered earlier.'" *See Engesser v. Dooley*

(*Engesser IV*), 823 F. Supp. 2d 910, 914 (D.S.D. 2011). The district court held an evidentiary hearing, during which it heard testimony from Eckholm, Fowler, and Smeenk. The court also heard testimony from Boyle and a new witness, Philip Syverson.

[¶11.]     Boyle testified that he was working as a security guard at the Full Throttle Saloon on the night of the accident. He knew Finley and said that he saw Finley and Engesser leave the bar around 6:30-7:00 p.m., with Finley in the driver's seat of the Corvette. Boyle was not available as a witness until this hearing because he had left the state in 2000 to avoid a potential 4th DUI charge.

[¶12.]     Syverson testified that he saw the Corvette immediately before the accident as it entered the Interstate 90 on-ramp heading east. Syverson was on Interstate 90, driving east, with his wife and daughter in the car. When the Corvette attempted to merge onto the Interstate it was parallel to Syverson's vehicle. The Corvette was travelling at approximately the same speed as his vehicle, except for the last one hundred meters, when it sped up and shot ahead of his car. Syverson testified that he noticed the Corvette when his car was traveling parallel to it. He looked over to the driver and observed feminine features and a feminine hair style. Shortly after the Corvette sped past Syverson's vehicle, Syverson came upon the accident. He stopped his car. His wife went to help the people in the minivan, and Syverson stayed with his daughter until his wife returned. They left before law enforcement officers arrived.

[¶13.]     Syverson was discovered as a potential witness after the accident came up in a conversation with his co-workers. They were discussing vehicle accidents,

and Syverson had mentioned that he saw an accident with a red Corvette a year earlier. His co-worker, Rusty Engesser, mentioned that his cousin was in that accident. Syverson was eventually contacted as a potential witness. He was shown a picture of Finley taken around the time of the accident and also a picture of Engesser taken while he was in the hospital after the accident. Syverson testified that the picture of Finley was consistent with the features he observed and, in reference to the picture of Engesser, stated that "in no way was that the driver."

[¶14.]    After the evidentiary hearing, Engesser urged the district court to consider the merits of his procedurally-defaulted ineffective assistance of counsel claim based on *Schlup v. Delo*, 513 U.S. 298, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995) and on 28 U.S.C. § 2244(b)(2)(B)(i)-(ii). He argued that based on his newly discovered evidence and in light of all the evidence, no reasonable juror would have found him guilty. The district court analyzed Engesser's claim under both the requirements of § 2244(b)(2)(B)(i)-(ii) and the *Schlup* standard. To meet the conditions of § 2244(b)(2), Engesser was required to establish "the factual predicate for the claim could not have been discovered previously through the exercise of due diligence[,]" and that "the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." The district court ruled that Engesser met the first requirement through the testimony of Syverson, which factual predicate could not have been previously discovered. The court further

ruled that, had Engesser's trial attorney been effective, no reasonable juror would have convicted him. The court noted,

> During Engesser's trial, Trooper Fox was the only witness to testify that Engesser was the driver of the Corvette. This assertion was not refuted by Engesser's attorney, who appeared to focus on the fact that the Corvette was stored outdoors, permitting any bodily fluids inside the Corvette to deteriorate. If Engesser's attorney had interviewed Eckholm and Fowler, and called them as witnesses, their testimony would have directly contradicted Trooper Fox's assertion that Engesser was the driver of the Corvette. The identity of the driver was the only issue at Engesser's trial. If a factfinder were presented with Eckholm's and Fowler's eyewitness testimony, no reasonable factfinder would have found Engesser guilty of the underlying offense. The only state court (Judge Macy) to have considered Eckholm's and Fowler's testimony and to weigh the testimony against the evidence presented at Engesser's trial found that their testimony would have changed the outcome of his trial. Moreover, Judge Macy reached this conclusion without the benefit of Syverson's eyewitness testimony, which demonstrates even more clearly that "but for the constitutional error, no reasonable factfinder would have found [Engesser] guilty of the underlying offense." 28 U.S.C. § 2244.

*Engesser IV*, 823 F. Supp. 2d at 925 (alteration in original).

[¶15.] The district court ruled that Engesser met the *Schlup* standard, which permitted habeas "review of otherwise barred claims if [the petitioner] produces reliable new evidence not available at trial establishing that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *See Amrine v. Bowersox*, 238 F.3d 1023, 1028 (8th Cir. 2001). In consideration of the "old and new, incriminating and exculpatory [evidence], without regard to whether it would necessarily be admitted under 'rules of admissibility that would govern at trial,'" the court ruled that "Engesser has demonstrated 'that more likely than not any reasonable juror would have reasonable doubt.'" *Engesser IV*, 823 F.

Supp. 2d at 927-28 (quoting *House v. Bell*, 547 U.S. 518, 538, 126 S. Ct. 2064, 2077, 165 L. Ed. 2d 1 (2006)).

[¶16.]     The federal district court then addressed the merits of Engesser's ineffective assistance of counsel claim. It deferred to the findings by the state court on Engesser's second petition for habeas relief and did not find unreasonable the state court's conclusion that Engesser's counsel was prejudicially ineffective. The district court granted Engesser's petition for a writ of federal habeas corpus under § 2254. The State appealed and the Eighth Circuit Court of Appeals reversed. It ruled that Engesser's successive petition for habeas relief must be dismissed because it was predicated on a claim (ineffective assistance of counsel for failing to investigate Eckholm and Fowler as witnesses) that was discoverable through the exercise of due diligence at the time of Engesser's first federal petition for habeas relief. *Engesser v. Dooley* (*Engesser V*), 686 F.3d 928, 937 (8th Cir. 2012).

[¶17.]     In February 2013, Engesser sought leave to file a fourth petition for habeas relief in state court. Engesser asserted his right to file a successive petition for a writ of habeas corpus under SDCL 21-27-5.1 based on Syverson's testimony. He also asserted a freestanding claim of actual innocence based on the South Dakota Constitution. He later amended his petition to assert newly discovered evidence through another witness, Ramona Dasalla, a resident of Rapid City. The State moved to dismiss Engesser's petition, arguing that his claim of newly discovered evidence was barred by SDCL 21-27-3.3, that he waived his claim of actual innocence by failing to raise it in a prior petition, and that his amended petition failed to state a claim upon which relief could be granted.

[¶18.] The habeas court granted Engesser leave to file the amended petition and held an evidentiary hearing in July 2013. At the hearing, Ramona Dasalla, Russell Engesser (Engesser's cousin), Rena Hymans (Engesser's former counsel), Val Engesser (Engesser's wife), Beau Goodman, Brett Garland, Todd Albertson, and Engesser testified. The habeas court also reviewed the evidence from Engesser's trial and previous habeas proceedings. In its memorandum decision and findings of fact and conclusions of law, the habeas court ruled that Engesser was aware of Syverson as a potential witness as early as November 2007, and therefore, his claim to the extent it relied on Syverson's testimony was barred by the statute of limitations under SDCL 21-27-3.3(4). But because the existence of Dasalla as a witness was unknown until April 2013, Engesser's petition was not time barred. The court found that Engesser did not waive his right to seek relief on a claim of actual innocence because the Legislature repealed SDCL 21-27-16.1, which provided that any ground for relief not raised in the original petition "may not be the basis for a subsequent application, unless the court finds grounds for relief asserted which for reasonable cause were omitted or inadequately raised in the original, supplemental, or amended application." The court also concluded that the Legislature's 2012 amendment to the laws governing habeas corpus created "more stringent guidelines for prisoners bringing multiple habeas corpus petitions" but "specifically carved out an exception for newly discovered evidence, that when weighed with the evidence as a whole, showed by clear and convincing evidence that no reasonable juror would have returned a guilty verdict." Finally, the court ruled that "principles of elemental fairness set forth in the due process protections of the

South Dakota constitution require recognition of a freestanding actual innocence claim."

[¶19.]    The habeas court highlighted the testimony from Goodman, Eckholm, Fowler, Boyle, Syverson, and Dasalla in reviewing whether Engesser "identifie[d] newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable fact finder would have found the applicant guilty of the underlying offense." *See* SDCL 21-27-5.1. Goodman testified at the second federal habeas hearing and the current hearing. Eckholm and Fowler testified at the second habeas hearing in state court and the second federal habeas hearing. Boyle, Smeenk, and Syverson testified at the second federal habeas hearing. Dasalla testified in the current hearing.

[¶20.]    The court ruled that Dasalla's testimony was newly discovered because her evidence was not known until April 2013. After Dasalla had read an article in a newspaper about Engesser's current petition for relief, she contacted the author of the article. The author put Dasalla in contact with Engesser's counsel. Dasalla reported that on the day of the accident, she and her boyfriend were traveling on Interstate 90 in the right-hand lane, heading toward Rapid City. She saw a red Corvette pass in the left-hand lane. Having an affinity for Corvettes and Camaros, she "was attracted to it and looked at it." She saw the driver of the Corvette. She was "absolutely sure" a woman was driving and a man was sitting in the passenger seat, turned "sitting three-quarters like this — toward the window." The Corvette drove past her boyfriend's vehicle and Dasalla did not see the accident happen.

When they came upon the scene, they stopped and parked for ten minutes. Dasalla saw the white minivan in the ditch and the Corvette in the median upside down. She also saw a body in the median. Dasalla remained in her boyfriend's vehicle the entire time and did not talk to anyone at the scene. Dasalla's boyfriend drove away when someone directing traffic told them to move on.

[¶21.]     The habeas court found "Ramona Dasalla's testimony to be credible, persuasive and compelling." It further found that her "testimony that she saw a woman driving a red Corvette on Interstate 90 immediately prior to the accident in which Dorothy Finley died is accurate and true." Based on Dasalla's testimony, the testimony of the other witnesses, and the evidence presented at trial, the habeas court concluded that "Engesser's evidence demonstrating his actual innocence is credible, persuasive, and compelling[.]" The court ruled that "Engesser has shown by clear and convincing evidence that the newly discovered evidence, in light of the evidence as a whole, would create reasonable doubt of his guilt in the mind of a reasonable juror." The court granted Engesser's request for a writ of habeas corpus based on SDCL 21-27-5.1 and based upon his freestanding claim of actual innocence under South Dakota's constitution.

[¶22.]     The State appeals, asserting that a freestanding claim of actual innocence does not exist in South Dakota and that the habeas court erred when it ruled that Engesser met the burden of proof under SDCL 21-27-5.1(1).[1]

---

1.     Standard of review:

>     Habeas corpus is not a substitute for direct review. Because habeas corpus is a collateral attack upon a final judgment, our scope of review is limited. . . .

(continued . . .)

## 1. Actual Innocence Claim under SDCL 21-27-5.1

[¶23.]    In 2012, at the request of the Office of the South Dakota Attorney General, the Legislature amended the code on habeas corpus. *See* S.D. Sess. Laws ch. 118, § 6. It repealed SDCL 21-27-16.1, which governed when an applicant could file a successive petition for a writ of habeas corpus. *Id.* Before SDCL 21-27-16.1 was repealed, this Court had interpreted it to require an applicant to show reasonable cause why the successive claim could not be brought in the original petition and "[a]ctual prejudice resulting from the alleged constitutional violation." *See Jackson*, 2001 S.D. 30, ¶ 11, 637 N.W.2d at 22 (citation omitted). In the same bill, Senate Bill 42, the Legislature enacted SDCL 21-27-5.1, governing when an

---------------------

(. . . continued)

> Habeas corpus can be used only to review (1) whether the court had jurisdiction of the crime and the person of the defendant; (2) whether the sentence was authorized by law; and (3) in certain cases whether an incarcerated defendant has been deprived of basic constitutional rights.

*Loop v. Class*, 1996 S.D. 107, ¶ 11, 554 N.W.2d 189, 191 (citation omitted).

> Statutory interpretation is a question of law reviewed de novo. *Perdue, Inc. v. Rounds*, 2010 S.D. 38, ¶ 7 n.2, 782 N.W.2d 375, 377 n.2. The purpose of statutory construction is to discover the true intention of the law which is to be ascertained primarily from the language expressed in the statute. *City of Rapid City v. Anderson*, 2000 S.D. 77, ¶ 7, 612 N.W.2d 289, 291-92 (citations omitted). The intent of a statute is determined from what the Legislature said, rather than what we think it should have said. *Id.* Words and phrases in a statute must be given their plain meaning and effect. *Moss v. Guttormson*, 1996 S.D. 76, ¶ 10, 551 N.W.2d 14, 17 (citations omitted). In interpreting statutes, we presume that the Legislature did not intend an absurd result. *Id.*

*Esling v. Krambeck*, 2003 S.D. 59, ¶ 6, 663 N.W.2d 671, 675-76.

applicant may file a successive petition for a writ of habeas corpus.  In its entirety,

that statute provides:

> A claim presented in a second or subsequent habeas corpus application under this chapter that was presented in a prior application under this chapter or otherwise to the courts of this state by the same applicant shall be dismissed.
>
> Before a second or subsequent application for a writ of habeas corpus may be filed, the applicant shall move in the circuit court of appropriate jurisdiction for an order authorizing the applicant to file the application.
>
> The assigned judge shall enter an order denying leave to file a second or successive application for a writ of habeas corpus unless:
>
> > (1) The applicant identifies newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable fact finder would have found the applicant guilty of the underlying offense; or
> >
> > (2) The application raises a new rule of constitutional law, made retroactive to cases on collateral review by the United States Supreme Court and the South Dakota Supreme Court, that was previously unavailable.  The grant or denial of an authorization by the circuit court to file a second or subsequent application shall not be appealable.

*Id.*  This case implicates subsection (1), and before we address the merits of the

habeas court's decision, we review the court's conclusion that SDCL 21-27-5.1(1)

gave Engesser a right to obtain habeas relief.

[¶24.]     The State contends that the Legislature did not intend to create an

independent means of habeas relief when it enacted SDCL 21-27-5.1(1).  Rather, the

State believes the Legislature created a "gateway" for an applicant to have an

otherwise-barred successive habeas corpus claim considered *if* the applicant could

also show that, but for a *constitutional error* at trial, no reasonable juror would have

-14-

found him guilty based upon the newly discovered evidence. As support, the State points to the companion federal rule, a rule the federal courts have consistently interpreted to require *both* newly discovered evidence *and* a deprivation of a constitutional right due to a trial error. *See* 28 U.S.C.A. § 2244(b)(2); *McQuiggin v. Perkins*, ___ U.S. ___, 133 S. Ct. 1924, 1932, 185 L. Ed. 2d 1019 (2013); *House*, 547 U.S. at 536, 126 S. Ct. at 2078; *see also Schlup*, 513 U.S. at 327, 115 S. Ct. at 867.

[¶25.] The United States Supreme Court has ruled that a right to habeas relief exists only upon a "constitutional claim with a colorable showing of factual innocence" and not upon a freestanding claim of actual innocence.[2] *See Herrera v. Collins*, 506 U.S. 390, 399, 404, 113 S. Ct. 853, 860, 862, 122 L. Ed. 2d 203 (1993). A majority of state courts have followed suit, including this Court in *Boyles v. Weber*, 2004 S.D. 31, ¶ 11, 677 N.W.2d 531, 537. *Boyles*, however, was decided before the Legislature repealed SDCL 21-27-16.1 and enacted SDCL 21-27-5.1(1). Moreover, although we have found federal precedent instructive when federal rules are similar to our statutes, § 2244(b)(2) is markedly different from SDCL 21-27-5.1(1). The federal rule specifically requires a constitutional error:

> (2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless--
>
> . . .
>
> (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

---

2. Although it must be noted the Court also wrote that "a truly persuasive demonstration of 'actual innocence'" in a capital case where there was "no state avenue open to process such a claim," would be unconstitutional. *Herrera*, 506 U.S. at 417, 113 S. Ct. at 869.

> (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, *but for constitutional error,* no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C.A. § 2244(b) (emphasis added). No similar requirement exists within SDCL 21-27-5.1(1) or the remaining statutes governing successive petitions for habeas relief.

[¶26.] Nonetheless, the State argues that the only reasonable interpretation of the Legislature's intent is that a petitioner must identify a constitutional error in addition to newly discovered evidence. This interpretation, the State believes, is necessary because habeas corpus is only available "to review (1) whether the court has jurisdiction of the crime and the person of the defendant; (2) whether the sentence was authorized by law; and (3) in certain cases whether an incarcerated defendant has been deprived of basic constitutional rights." *See Lawrence v. Weber,* 2011 S.D. 19, ¶ 7, 797 N.W.2d 783, 785 (citations omitted). Thus, while the Legislature did not use the words "but for the constitutional error," the State contends the habeas court was without authority to review Engesser's claim that newly discovered evidence established his actual innocence.

[¶27.] "A habeas corpus proceeding is a civil action which exists solely under statutes passed by our Legislature." *Haase v. Weber*, 2005 S.D. 23, ¶ 8, 693 N.W.2d 668, 670 (Gilbertson, C.J., dissenting). We confine our review, therefore, to the statutory scheme governing habeas corpus proceedings. Under SDCL 21-27-1, "[a]ny person committed or detained, imprisoned or restrained of his liberty" has a right to file a petition for a writ of habeas corpus relief. The petitioner bears the initial burden of proof to establish a colorable claim for relief, and the petition must

"set[ ] forth the facts concerning his detention" and "identify any previous applications made pursuant to this chapter, together with the grounds therein asserted." *See* SDCL 21-27-3. A two-year statute of limitations is imposed from "[t]he date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." SDCL 21-27-3.3(4). When a petition is successive, SDCL 21-27-5.1(1) requires that the petitioner seek leave from the court before filing the petition, which leave can be obtained by "identif[ying] newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable fact finder would have found the applicant guilty of the underlying offense[.]" Once leave is granted and the writ is filed and returned, SDCL 21-27-12 requires that "a day shall be set for the hearing of the cause of imprisonment or detainer[.]" Thereafter, "[t]he court or judge shall proceed in a summary way to settle the facts by hearing the evidence and arguments . . . and shall dispose of the applicant as the case may require." SDCL 21-27-14.

[¶28.]     In chapter 21-27 and particularly in SDCL 21-27-5.1(1), the Legislature gave a habeas court the authority to consider the merits of successive petitions for a writ of habeas corpus if the petitioner brought forth newly discovered evidence that, if proven and considered in light of the other evidence, clearly and convincingly established that no reasonable fact finder would have found the petitioner guilty of the underlying offense. It would be a usurpation of legislative prerogative to hold that after a habeas court rules a petitioner met the statutory requirements to file a successive petition, that the court must nonetheless dismiss

the petition because the petitioner failed to also identify a constitutional error. The Legislature did not impose this requirement, and we should not read it into the plain and unambiguous language of SDCL 21-27-5.1(1).[3] *See State v. Wilson*, 2004 S.D. 33, ¶ 9, 678 N.W.2d 176, 180. We conclude that the habeas court did not err when it "proceed[ed] in a summary way to settle the facts by hearing the evidence and arguments" and "dispose[d] of the applicant as the case may require," *see* SDCL 21-27-14, after it granted Engesser leave to file the successive petition under SDCL 21-27-5.1(1).

### 2. Engesser's Petition for a Writ of Habeas Corpus

[¶29.]     The State next contends that the habeas court erred when it concluded that Engesser's newly discovered evidence, if proven and viewed in light of the other evidence, established by clear and convincing evidence that no reasonable juror would have found Engesser guilty. Moreover, the State argues that this Court should not employ its traditional clearly erroneous standard of review against the habeas court's factual findings, because the "weight of the interests at stake"

---

3.     Several states have allowed a freestanding claim of actual innocence by statute. Ariz. R. Crim. P. 32.1(h); Ark. Code Ann. §§ 16-112-201, -208; Del. Code Ann. tit 11, § 4504; D.C. Code § 22-4135; Me. Rev. Stat. Ann. tit. 15 § 2138(10); Md. Crim. Proc. § 8-301; Minn. Stat. § 590.01; Ohio Rev. Code Ann. § 2953.21; Tenn. Code Ann. § 40-30-117; Utah Code Ann. § 78B-9-301; Va. Code Ann. § 19.2-327.10. Other states have recognized such a claim by case law. *See In re Bell*, 170 P.3d 153, 157 (Cal. 2007); *Miller v. Comm'r of Corr.*, 700 A.2d 1108, 1130 (Conn. 1997); *People v. Washington*, 665 N.E.2d 1330, 1336-37 (Ill. 1996); *Montoya v. Ulibarri*, 163 P.3d 476, 484 (N.M. 2007); *State ex rel. Amrine v. Roper*, 102 S.W.3d 541, 547 (Mo. 2003); *Beach*, 302 P.3d at 51-52. South Dakota is not alone in acknowledging that "[o]ur criminal justice system has little value if it cannot differentiate the guilty from the innocent with a high degree of certainty." *Jackson*, 2001 S.D. 136, ¶ 27, 637 N.W.2d at 25 (Konenkamp, J., concurring).

warrants a heightened level of review. The State asks for an independent and scrupulous review of the evidence and an affirmance only if the decision is supported by substantial evidence.

[¶30.] We find persuasive the Connecticut Supreme Court's analysis in *Miller v. Commissioner of Correction*, which examined the standard of review appropriate for a habeas court's factual findings on a claim of innocence based on newly discovered evidence. *See* 700 A.2d 1108, 1136 (Conn. 1997). The court recognized that de novo review by an appellate court would be "inconsistent" with the mandate that the habeas court assess the credibility of the particular witnesses and make factual determinations. *Id.* But the court found insufficient the deferential clearly erroneous standard because that level of review would "not afford sufficient weight to the importance of the factual determination at stake, to the interests of the parties, and to the extraordinary nature of the ultimate remedy in the event that the petitioner is successful." *Id.* "The appropriate scope of review," the court ruled, "is whether, after an independent and scrupulous examination of the entire record, we are convinced that the finding of the habeas court . . . is supported by substantial evidence." *Id.* Other state courts use this standard. *In re Richards*, 289 P.3d 860, 869 (Cal. 2012) (substantial evidence standard); *Mayshack v. Werholtz*, 142 P.3d 338 (Kan. Ct. App. 2006) (substantial evidence standard). We adopt this standard to review the habeas court's factual findings.

[¶31.] In deciding whether the factual findings of the habeas court are supported by substantial evidence, we will not reweigh the evidence and substitute our judgment for that of the court. *See Olson v. City of Deadwood*, 480 N.W.2d 770,

775 (S.D. 1992). But the record must show that the court evaluated the testimony deemed credible in light of the other evidence to determine whether the court's impression of the testimony can be sustained in light of the record as a whole. *See Doe v. Menefee*, 391 F.3d 147, 164-65 (2d Cir. 2004).

[¶32.] From our review of the record, we conclude that there was adequate support for the habeas court's finding that Dasalla was a credible witness. Although the State insists that Dasalla could not be found credible because, among other things, she falsely denied meeting with Engesser's attorneys, she materially changed her testimony on what she saw, and she denied seeing a photograph of Finley with short hair, the habeas court listened to Dasalla testify and heard the discrepancies and inconsistences highlighted by the State's cross examination. The court emphasized that despite the inconsistencies on certain details, Dasalla maintained that she saw a woman driver and a male passenger. Moreover, the court found relevant that Dasalla had no connection to Engesser or this case. She came forward after reading a news article about Engesser's petition for habeas relief. The court viewed Dasalla's testimony in light of the other evidence, and specifically found her to be "credible, persuasive and compelling[.]" Finally, the court found that "Dasalla's testimony that she saw a woman driving the red Corvette on Interstate 90 immediately prior to the accident in which Dorothy Finley died is accurate and true."

[¶33.] The State next contends that the habeas court improperly considered Syverson's testimony, because his testimony was not newly discovered under SDCL 21-27-3.3(4). But our law permits consideration of this testimony. SDCL 21-27-

5.1(1) specifically directs the habeas court to consider the newly discovered evidence (Dasalla's testimony) in light of the other evidence (all trial evidence and evidence from all habeas proceedings). Even under federal law, as the Supreme Court noted, "the habeas court must consider 'all the evidence,' old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under 'rules of admissibility that would govern at trial.'" *House*, 547 U.S. at 538, 126 S. Ct. at 2077 (quoting *Schlup*, 513 U.S. at 327-28, 115 S. Ct. at 867).

[¶34.] Lastly, the State contends that even if this Court considers all the evidence, "Engesser has failed to produce unquestionable (clear and convincing) proof that he is actually innocent." The State explains in great detail why the testimony of Eckholm, Fowler, Syverson, and Dasalla is inherently unreliable and could not overcome the persuasive physical evidence of Engesser's guilt presented at trial. In the State's view, Engesser's petition is "based solely on the fuzzy, decade-old memories of (allegedly) newly-identified eyewitnesses who exhibit bias and whose testimony contradicts the physical evidence."

[¶35.] We must acknowledge the reality that Engesser was found guilty by a jury of his peers in an error-free trial, and therefore, no longer enjoys the presumption of innocence. *See Herra*, 506 U.S. at 399, 113 S. Ct. at 860. Moreover, although "[d]eference is given to a trial court's assessment of evidence presented to it in the first instance," similar deference is not given to the court's application of the facts to the legal standard. *See House*, 547 U.S. at 539, 126 S. Ct. at 2078; *see also Beach*, 302 P.3d at 52 (Montana recognizes two species of actual innocence

claims: substantive and procedural.).[4] Rather, this decision involves a mixed question of fact and law and implicates our de novo review. *See Stockwell v. Stockwell*, 2010 S.D. 79, ¶ 16, 790 N.W.2d 52, 59 (citation omitted); *see also Menefee*, 391 F.3d at 163. We do not "make an independent factual determination about what likely occurred, but rather [we] assess the likely impact of the evidence on reasonable jurors." *See House*, 547 U.S. at 538, 126 S. Ct. at 2077 (citation omitted). The focus is on what a reasonable juror *would* do in light of the newly discovered evidence and the other evidence. Specifically, we must find that the newly discovered evidence, if proven and viewed in light of the other evidence, establishes by clear and convincing evidence that no reasonable fact finder would have found Engesser guilty of the underlying offenses. *See* SDCL 21-27-5.1(1).

[¶36.] The only witness to testify that Engesser was in the driver's seat was Trooper Fox, who based his testimony on his examination of the Corvette, the reported position of Finley's body and her injuries, his belief that Engesser was lying, and his three years' experience with the South Dakota Highway Patrol. Yet Trooper Fox did not arrive at the scene until after Finley had been removed from the car and Engesser was transported to the hospital. In Engesser's trial, the jury

---

4. In *Beach*, the Montana Supreme Court, applying de novo review, reversed a district court's grant of a new trial because the judge considered only the new evidence, which by itself was compelling, but when considered with all the old evidence presented in the 1984 trial, including the petitioner's confession, did not provide reliable proof of actual innocence. 302 P.3d at 71. In contrast, the evidence offered in Engesser's trial that he was the driver was neither compelling nor substantial. And his newly discovered eyewitness testimony presents reliable proof, along with all the evidence, to conclude that no reasonable fact finder would have found Engesser guilty of the offenses charged against him. *See* SDCL 21-27-5.1(1).

heard testimony from Mary Redfield that when she arrived on the scene, she found the driver's-side door of the Corvette open. But the testimony from Smeenk suggested otherwise. Smeenk arrived at the scene immediately after the accident. He had to pry the driver's-side door open to check Finley's pulse. After confirming that she was not alive, he left the scene before talking to law enforcement officers because he had his daughters in his car.

[¶37.] At trial, Trooper Fox testified about his investigation of the accident scene and opined that the location of the driver's seat would have comfortably fit Engesser not Finley. But Trooper Fox initially wrote in his report that Finley was the driver, which to the habeas court was consistent with Eckholm's testimony that Eckholm used the words "she and her" when giving his statement to Trooper Fox on the night of the accident. Additionally, at trial, the state's forensic expert could not give an opinion on whether Finley was the passenger or the driver. Another expert testified that it was possible for a driver to get thrown around in the vehicle and end up in the passenger seat. Further suggesting that Engesser was ejected out of the passenger window, Eckholm and Fowler testified to seeing Engesser ejected from the vehicle before it rolled in the median. Finally, Syverson and Dasalla testified that moments before the accident they observed a woman driving the Corvette and a man in the passenger seat.

[¶38.] "Punishment of the innocent may be the worst of all injustices." *Jenner v. Dooley*, 1999 S.D. 20, ¶ 19, 590 N.W.2d 463, 471. Three habeas judges, two state and one federal, had serious doubts about Engesser's guilt after observing and considering exculpatory testimony from multiple eyewitnesses. From our

review of the evidence presented in Engesser's current habeas proceeding, including Dasalla's newly discovered testimonial evidence, as well as the evidence presented in his trial and in each previous habeas proceeding in state and federal court, we conclude that there is substantial evidence to support the circuit court's conclusion that Engesser established by clear and convincing evidence that no reasonable juror would have found him guilty of the underlying offense.

[¶39.] Because we uphold the grant of Engesser's writ of habeas corpus and order for a new trial under SDCL 21-27-5.1(1), we need not consider whether a freestanding claim of actual innocence exists under the South Dakota Constitution. Moreover, although the State contends that the habeas court erred when it failed to give the State unfettered access to attorney Hyman's file, the State abandoned that claim when it failed to set the motion for a hearing. The court did not address the merits, and therefore, there is no decision for this Court to review. *See In re Regennitter*, 1999 S.D. 26, ¶ 10 n.2, 589 N.W.2d 920, 923 n.2 (citations omitted).

[¶40.] Affirmed.

[¶41.] GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and WILBUR, Justices, concur.