#28151-a-LSW
**2017 S.D. 71**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

MICHAEL A. IANNARELLI,                    Petitioner and Appellant,

     vs.

DARIN YOUNG, Warden of the
South Dakota State Penitentiary,          Respondent and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
CODINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE GREGORY J. STOLTENBURG
Judge

\* \* \* \*

DONALD M. McCARTY
BENJAMIN KLEINJAN
Helsper, McCarty & Rasmussen, PC
Brookings, South Dakota          Attorneys for petitioner and
appellant.


MARTY J. JACKLEY
Attorney General

JOHN M. STROHMAN
Assistant Attorney General
Pierre, South Dakota          Attorneys for respondent and
appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
ON AUGUST 28, 2017
OPINION FILED **11/08/17**

#28151

WILBUR, Retired Justice

[¶1.]        Habeas petitioner asserts denial of his Fifth Amendment right against self-incrimination and Sixth Amendment right to counsel.  We affirm.

**Background**

[¶2.]        On February 16, 2007, Michael Iannarelli murdered his disabled wife and raped his fourteen-year-old stepdaughter.  Afterwards, he made a pot of coffee and called 911.  Iannarelli told law enforcement that he had killed his wife.  The State charged Iannarelli with first-degree murder and second-degree rape.  The State indicated that it intended to seek the death penalty.

[¶3.]        The circuit court appointed Attorney Roger Ellyson to represent Iannarelli.  Attorney Ellyson had practiced law for over thirty years, including twenty years as a prosecutor.  Attorney Ellyson informed Iannarelli of his rights and had him sign a document titled, "STATEMENT OF RIGHTS."  That document provided, in part, that if Iannarelli were to plead guilty he would waive certain rights, including "the right to not be compelled to incriminate yourself."

[¶4.]        Attorney Ellyson later testified that he explored the plausibility of an insanity defense.  He moved the court to appoint an expert witness to conduct a psychiatric examination.  The court granted the motion, and Attorney Ellyson hired Dr. Stephen Manlove, a forensic psychiatrist.  Attorney Ellyson believed Dr. Manlove could identify mitigating factors if the insanity defense seemed unlikely.  He asked Dr. Manlove to give an expert opinion on whether "Iannarelli was insane (as that term is defined by statute) at the time the alleged offenses (murder and

-1-

rape) were committed" and whether Iannarelli "suffered from mental illness at the time the alleged offenses were committed."

[¶5.] After Dr. Manlove issued his report, Attorney Ellyson realized that it would not support an insanity defense but would support a plea of guilty but mentally ill. In the report, Dr. Manlove had opined with reasonable medical certainty that Iannarelli suffered from a major depressive disorder that impaired his judgment at the time of the offense. Attorney Ellyson also believed that Dr. Manlove's report contained mitigating evidence. He advised Iannarelli that an insanity defense would be unlikely and discussed a plea of guilty but mentally ill. Iannarelli has an IQ in the 99th percentile, and at all times Attorney Ellyson believed Iannarelli understood what was being told to him.

[¶6.] Ultimately, Iannarelli agreed to plead guilty but mentally ill to first-degree manslaughter and to second-degree rape in exchange for the State amending the charge and not seeking the death penalty. Iannarelli entered into a written plea agreement, which contained a section titled, "WAIVER OF RIGHTS." In that waiver, Iannarelli indicated that he "fully understand[s] that by entry of the pleas of guilty BUT MENTALLY ILL herein, he will have waived . . . his right to remain silent[.]" The parties submitted the plea agreement to the circuit court. Iannarelli also submitted an affidavit and report from Dr. Manlove in lieu of a factual basis to establish his plea of guilty but mentally ill.

[¶7.] On October 11, 2007, the court held a plea hearing. At the hearing, Iannarelli indicated his intent to plead guilty but mentally ill. The court took a recess and reconvened for a hearing on Iannarelli's mental health. The State and

Iannarelli stipulated to the submission of Dr. Manlove's report as evidence of Iannarelli's mental health. The court reviewed the report and found that Iannarelli was mentally ill at the time of the offenses as defined in SDCL 22-1-2(24). The court also found a factual basis for each plea and concluded that Iannarelli's guilty but mentally ill pleas were voluntary, intelligent, and knowing. The court accepted Iannarelli's plea of guilty but mentally ill to first-degree manslaughter and second-degree rape.

[¶8.] The court ordered Iannarelli to participate in a presentence investigation. The court indicated that as part of that presentence investigation and in consultation with the court services officer, it would request a psychological evaluation to assist in sentencing. In response to a question by the State, the court agreed that the psychological evaluation would include a psychosexual evaluation.

[¶9.] Dr. Bradley Woldt, a clinical psychologist, evaluated Iannarelli. Dr. Woldt went through an informed-consent form with Iannarelli prior to the evaluation. Dr. Woldt later testified that Iannarelli indicated that he understood the form. Dr. Woldt conducted a mental-health assessment and psychosexual examination. Following the evaluation, Dr. Woldt issued a written opinion on Iannarelli's diagnosis and likelihood of rehabilitation. He also included a risk assessment. Dr. Woldt agreed with Dr. Manlove that Iannarelli suffered from a major depressive disorder and was likely experiencing a major depressive episode at the time of the offense but disagreed that it was to the level of "severe with psychotic features," as Dr. Manlove had opined. In Dr. Woldt's opinion, Iannarelli

posed a high risk to the community, and rehabilitation efforts would be lengthy and difficult. Dr. Woldt's report was made part of the presentence investigation report.

[¶10.] On December 21, 2007, the circuit court held a sentencing hearing. The State referred to Dr. Woldt's report as support for imposition of the maximum possible sentences for Iannarelli's crimes. Attorney Ellyson relied on Dr. Manlove's report and argued for sentences less than the maximum. After hearing arguments from counsel and one victim-impact statement, the court imposed a 130-year sentence for first-degree manslaughter and a 45-year sentence for second-degree rape.

[¶11.] The court relied on the record evidence, including Dr. Manlove's and Dr. Woldt's reports. The court found Iannarelli's lack of previous criminal history and his mental illness to be mitigating factors. The court then noted the extremely violent nature of the crimes. In regard to Iannarelli's future risk to the public, the court referred to Dr. Woldt's opinion that Iannarelli is "a high risk to the public." The court also considered Iannarelli's prospects for rehabilitation. It referred to Iannarelli's diagnoses from Dr. Woldt and Dr. Manlove, as well as the other record evidence. In particular, the court noted that "Dr. Woldt expresses the opinion that your prognosis is not good. You are likely not to be amenable to treatment. And prognosis is questionable at best. He also expresses the opinion that your rehabilitation will be lengthy and difficult. All of that, of course, would indicate to the [c]ourt that a substantial sentence is warranted here."

[¶12.] Iannarelli appealed his sentences, which we affirmed in *State v. Iannarelli*, 2008 S.D. 121, 759 N.W.2d 122. On October 23, 2013, Iannarelli

petitioned the circuit court for habeas relief. The habeas court appointed counsel and held a hearing on April 29, 2016. Iannarelli argued that Attorney Ellyson had deprived him of his Fifth and Sixth Amendment rights by failing to challenge the use of Iannarelli's unwarned and compelled statements to Dr. Woldt and because the sentencing court used those statements to impose its sentence. Iannarelli also asserted that he was denied effective assistance of counsel and due process when Attorney Ellyson failed to seek provisional institutionalization under SDCL 23A-27-42.

[¶13.]     Following the hearing, the habeas court issued a memorandum decision. It held that Iannarelli failed to prove that Attorney Ellyson's legal representation was deficient. It noted that Attorney Ellyson had advised Iannarelli of his constitutional and statutory rights during the pre-trial and plea-agreement phases. The habeas court declined "to act as a Monday morning quarterback and second-guess Mr. Ellyson's every decision through the application of a 'super lawyer' standard."

[¶14.]     The habeas court also declined to strictly follow a case from Idaho, which held that counsel's failure to inform defendant of his right to remain silent during a psychosexual examination constituted prejudicial error. *See Estrada v. State*, 149 P.3d 833, 839 (Idaho 2006). Instead, the habeas court examined the circumstances to determine whether Iannarelli established serious prejudice such that any error by Attorney Ellyson deprived Iannarelli of fair proceedings. In regard to the reports issued by Dr. Manlove and Dr. Woldt, the habeas court determined that "there has been no showing that either of these reports, regardless

of their propriety, created a serious prejudice against" Iannarelli. In the habeas court's view, any objection by Attorney Ellyson to Dr. Woldt's report would have failed because a sentencing court may consider a broad range of evidence. The habeas court further highlighted that Iannarelli put his mental health at issue as "a strategy necessary to secure the court's acceptance of a guilty but mentally ill plea." The habeas court concluded, therefore, that even if Attorney Ellyson should have advised Iannarelli of his right to remain silent, Iannarelli failed to establish prejudice.

[¶15.] On Iannarelli's claim that he was entitled to provisional institutionalization under SDCL 23A-27-42, the habeas court disagreed, relying on SDCL 23A-27-38. Under SDCL 23A-27-38, Iannarelli had the right to receive mental health treatment (i.e., treatment in an institution) if his symptoms of mental illness warranted treatment. Because Iannarelli "presented no evidence that he ha[d] requested and been subsequently denied mental health treatment that he may be statutorily entitled to receive while serving his sentence," the habeas court found "no factual ground to declare [Iannarelli's] sentence to the South Dakota State Penitentiary erroneous[.]"

[¶16.] The habeas court denied Iannarelli's petition for a writ of habeas corpus. Iannarelli moved for a certificate of probable cause on three issues, including whether counsel was ineffective for failing to advise him of his right to remain silent and for failing to demand an evidentiary hearing for a sentence of provisional institutionalization under SDCL 23A-27-42. The habeas court granted

Iannarelli's motion, concluding that "there is probable cause that an appealable issue or issues do exist."

[¶17.] Iannarelli appeals, asserting the following issues:

1. Whether Iannarelli was deprived of effective assistance of counsel in violation of the Sixth Amendment and compelled to give testimony against himself in violation of the Fifth Amendment because the court ordered a psychological examination and because Attorney Ellyson failed to warn Iannarelli that statements made to Dr. Woldt could be used against him.

2. Whether Iannarelli was deprived of procedural due process and whether his counsel was ineffective when provisional institutionalization procedure was ignored.

## Standard of Review

[¶18.] "Habeas corpus is not a substitute for direct review. Because habeas corpus is a collateral attack upon a final judgment, our scope of review is limited." *Engesser v. Young*, 2014 S.D. 81, ¶ 22 n.1, 856 N.W.2d 471, 478 n.1. We review only "(1) whether the court had jurisdiction of the crime and the person of the defendant; (2) whether the sentence was authorized by law; and (3) in certain cases whether an incarcerated defendant has been deprived of basic constitutional rights." *Id.* (quoting *Loop v. Class*, 1996 S.D. 107, ¶ 11, 554 N.W.2d 189, 191).

## Analysis

[¶19.] Before we address the issues raised by Iannarelli, we discuss the guidelines governing certificates of probable cause under SDCL 21-27-18.1, which this Court adopted in *Lange v. Weber*, 1999 S.D. 138, 602 N.W.2d 273. In *Lange*, we recognized that the purpose of issuing a certificate of probable cause is to decrease the volume of frivolous appeals from post-conviction proceedings. *Id.* ¶ 10. Requiring a certificate of probable cause creates "discretionary appellate review of

habeas petitions." *Id.* "In order to stave off the increasing burden of frivolous appeals in post-conviction proceedings," this Court adopted "the standard followed in the federal court system." *Id.* ¶ 12. We said,

> We interpret SDCL 21-27-18.1 to mean that if the trial court denies an application in a habeas claim, it must either issue a certificate of probable cause or state why a certificate should not issue. *A specific showing of probable cause must be articulated on the certificate* in order to confer jurisdiction upon this Court to review the denial of a habeas corpus petition. The certificate must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. 2253(c)(2). In addition, *the certificate must indicate which specific issue or issues satisfy the showing of the denial of a constitutional right.*

*Id.* (emphasis added); *accord Ashley v. Young*, 2014 S.D. 66, ¶¶ 7-9, 854 N.W.2d 347, 349-50.

[¶20.]     Here, although the habeas court issued a certificate of probable cause after denying Iannarelli habeas relief, the court did not follow the guidelines adopted in *Lange*. The habeas court did not articulate a specific showing of probable cause, make a substantial showing of the denial of a constitutional right, or indicate which issue or issues raised by Iannarelli satisfied the showing of a denial of a constitutional right. In future cases, circuit courts are directed to comply with the dictates of *Lange* before issuing certificates of probable cause.

[¶21.]     However, we address Iannarelli's claims on appeal because reversing for the habeas court to follow *Lange* would not "stave off the increasing burden of frivolous appeals in post-conviction proceedings[.]" *See Lange*, 1999 S.D. 138, ¶ 12, 602 N.W.2d at 276. In his motion for a certificate of probable cause, Iannarelli specifically articulated why he believes probable cause exists to warrant the certificate on the issues asserted. He also claimed that those issues evince a denial

of his constitutional rights. So in this case, it is enough that the habeas court certified "that there is probable cause that an appealable issue or issues do exist."

### 1. Examination by Dr. Woldt

[¶22.]    After Iannarelli pleaded guilty but mentally ill to first-degree manslaughter and second-degree rape, the sentencing court directed Iannarelli to complete a presentence investigation and psychological examination including a psychosexual examination. Iannarelli claims that he should have been specifically informed of his Fifth Amendment right against self-incrimination prior to his participation in the psychological examination by Dr. Woldt and that his counsel's failure to provide an adequate warning or move to exclude Dr. Woldt's report deprived him of effective assistance of counsel. Iannarelli argues that he was prejudiced by his counsel's error because he was compelled to make incriminating statements to Dr. Woldt and the court used Dr. Woldt's report to impose a harsher sentence. Iannarelli likens his circumstances to those examined by the United States Supreme Court in *Estelle v. Smith*, 451 U.S. 454, 101 S. Ct. 1866, 68 L. Ed. 2d 359 (1981), by this Court in *State v. Berget*, 2013 S.D. 1, 826 N.W.2d 1, and by the Idaho Supreme Court in *Estrada v. State*, 149 P.3d 833 (Idaho 2006). In these cases, the respective courts held that a sentencing court's reliance on a defendant's unwarned statements made in a psychiatric (*Estelle* and *Berget*) or psychosexual (*Estrada*) examination to impose sentence could violate a defendant's Fifth Amendment right against self-incrimination.

[¶23.]    In *Estelle*, a Texas trial judge ordered Smith to undergo a psychiatric examination to determine competency prior to trial. 451 U.S. at 456-57, 101 S. Ct.

at 1870. After a jury found Smith guilty of first-degree murder, the jury was required to decide whether to impose the death penalty. To do so, the jury needed to find that "there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." *Id.* at 458, 101 S. Ct. at 1870 (quoting Tex. Code Crim. Proc. Ann. art. 37.701(b)(2) (Vernon Supp. 1980)). Over defense counsel's objection, the state called the psychiatrist who had examined Smith prior to trial to determine Smith's competency. The psychiatrist testified that Smith is a severe sociopath whose condition would only get worse. The jury imposed the death penalty against Smith.

[¶24.] Smith appealed asserting that the court violated his Fifth Amendment right against self-incrimination. The United States Supreme Court agreed. It first recognized that the Fifth Amendment applies in the penalty phase, not just the guilt phase. *Id.* at 463, 101 S. Ct. at 1873. The Court then concluded that Smith's unwarned statements to the psychiatrist implicated the Fifth Amendment. *Id.* In the Court's view, when the psychiatrist "went beyond simply reporting to the court on the issue of competence and testified for the prosecution at the penalty phase on a crucial issue of [Smith's] future dangerousness, his role changed and became essentially like that of an agent of the State recounting unwarned statements made in a post-arrest custodial setting." *Id.* at 467, 101 S. Ct. at 1875. The Court held that "[a] criminal defendant, who neither initiates a psychiatric evaluation nor attempts to introduce any psychiatric evidence, may not be compelled to respond to a psychiatrist if his statements can be used against him at a capital sentencing proceeding." *Id.* at 468, 101 S. Ct. at 1876.

[¶25.]     This Court in *Berget* relied on *Estelle* in deciding whether the circuit court violated Berget's right against self-incrimination by considering a psychiatric report in fashioning Berget's sentence. 2013 S.D. 1, ¶ 95, 826 N.W.2d at 29. In the pre-trial phase, Berget's counsel had moved for and obtained a psychiatric examination to determine Berget's competency to stand trial. Berget submitted the report to the State and circuit court on the understanding that it would be kept under seal unless the doctor was called to testify by Berget as a witness. Berget ultimately pleaded guilty, and the doctor never testified. When the court imposed its sentence, however, it referred to the doctor's report and used the report to weigh against the mitigating effect of Berget's acceptance of responsibility.

[¶26.]     On appeal, Berget argued that the circuit court's use of the report violated his Fifth Amendment right against self-incrimination. Relying on *Estelle*, we recognized that the Fifth Amendment applies to the penalty phase. *Id.* ¶ 98. We then noted that Berget had no notice that his statements to the doctor would be used against him during the sentencing phase. We also considered that Berget had not placed his mental status at issue and that neither the State nor Berget were aware the court would consider the doctor's report. We held that the circuit court improperly relied on the statements made by Berget during the competency evaluation in violation of Berget's Fifth Amendment right against self-incrimination. *Id.* ¶ 119.

[¶27.]     In *Estrada*, an Idaho court ordered a psychosexual evaluation after Estrada pleaded guilty to rape. 149 P.3d at 835. Estrada failed to complete certain evaluation forms, and his counsel wrote a letter informing him that "[w]e would not

want the judge to consider your lack of cooperation to mean that you are not willing to comply with court orders." *Id.* Estrada participated in the evaluation, and the report contained "a number of unfavorable and derogatory comments about Estrada, including references to his potential for future violent actions." *Id.* The court relied on the report when it sentenced Estrada.

[¶28.] Estrada sought post-conviction relief asserting that his counsel was ineffective for failing to advise him of his right to remain silent and of his right not to participate in the psychosexual evaluation. The Idaho Supreme Court concluded that a court-ordered psychosexual evaluation is a critical stage of the proceeding. *Id.* at 837. The court distinguished the psychosexual evaluation from a routine presentence investigation. It held, therefore, that a court-ordered psychosexual evaluation implicated a defendant's right to assistance of counsel under the Sixth Amendment. In the court's view, counsel need not be present but held that a defendant has a right to assistance of counsel on the decision whether to submit to a psychosexual examination. *Id.* at 837-38.

[¶29.] Although *Estelle*, *Berget*, and *Estrada* all support that a defendant has a Fifth Amendment right against self-incrimination in the sentencing phase, none of the cases compel the conclusion that Iannarelli's unwarned participation in Dr. Woldt's psychological examination violated that right. Unlike the defendants in *Berget*, *Estelle*, and *Estrada*, Iannarelli specifically placed his mental status at issue. He requested and received a psychological examination by Dr. Manlove to negotiate a plea agreement with the State and to remove the possibility of the death penalty. Iannarelli submitted Dr. Manlove's report to the court as support for his

plea of guilty but mentally ill and as evidence of mitigation during the sentencing phase.

[¶30.] Iannarelli, however, avers that he could not be compelled to participate in a psychological examination by Dr. Woldt without being advised of his right to remain silent because "[t]he issue of his mental illness was already resolved, the statutory basis already established, and plea bargain struck." He concedes that the court could order that he participate in a psychosexual evaluation. But he claims that when the court ordered a psychological examination, Attorney Ellyson had a duty to advise him of his Fifth Amendment right against self-incrimination.

[¶31.] In *Berget*, we recognized that "the Fifth Amendment analysis might be different where a defendant 'intends to introduce psychiatric evidence at the penalty phase[.]'" 2013 S.D. 1, ¶ 102, 826 N.W.2d at 31-32 (quoting *Penry v. Johnson*, 532 U.S. 782, 795, 121 S. Ct. 1910, 1919, 150 L. Ed. 2d 9 (2001)); *accord Buchanan v. Kentucky*, 483 U.S. 402, 107 S. Ct. 2906, 97 L. Ed. 2d 336 (1987). Indeed, to conclude otherwise would mean that "[w]hen a defendant asserts the insanity defense and introduces supporting psychiatric testimony, his silence may deprive the State of the only effective means it has of controverting his proof on an issue that he interjected into the case." *Estelle*, 451 U.S. at 465, 101 S. Ct. at 1874. So a defendant can waive the Fifth Amendment right against self-incrimination "when the defendant initiates a trial defense of mental incapacity or disturbance, even though the defendant had not been given *Miranda* warnings[.]" *Berget*, 2013 S.D. 1, ¶ 103, 826 N.W.2d at 32 (quoting *Gibbs v. Frank*, 387 F.3d 268, 274 (3d Cir.

2004)). And the right to remain silent is deemed waived unless invoked. *State v. Garber*, 2004 S.D. 2, ¶ 23, 674 N.W.2d 320, 326.

[¶32.] Based on our review of the circumstances, we conclude that Iannarelli waived his Fifth Amendment right against self-incrimination by failing to invoke it during Dr. Woldt's psychological examination. Iannarelli specifically placed his mental status at issue during the sentencing phase by pleading guilty but mentally ill and by obtaining and submitting a psychological report in support of a more lenient sentence. Unlike *Estelle* and *Berget*, Iannarelli was examined by Dr. Woldt after he pleaded guilty but mentally ill. More importantly, he knew that the statements he made during Dr. Woldt's examination as well as Dr. Manlove's would be used by the court when it imposed its sentence. *See Buchanan*, 483 U.S. at 423-24, 107 S. Ct. at 2918 (when defendant presents psychiatric evidence, defendant would have no Fifth Amendment right against the introduction of psychiatric testimony by the prosecution). Indeed, Dr. Woldt informed Iannarelli that "the topics and questions to which [Iannarelli] did not respond to his satisfaction" would be noted in the report and that "[i]nformation that is incomplete, wrong, or misleading may be far more damaging than if Dr. Woldt is able to find out about it during the evaluation[.]"

[¶33.] The circumstances of this case do not present a situation where a defendant (without ever introducing psychiatric evidence) was compelled to respond to a psychiatrist without warning that his statements could be used against him during the penalty phase. Likewise, we consider that this case involves a defense theory related to the defendant's mental status and the defendant submitted

psychiatric evidence in support of a more lenient sentence. Based on those considerations and that Iannarelli did not invoke his right to remain silent despite knowing the court intended to use Dr. Woldt's report at sentencing, this case does not present the concerns identified in *Estelle*, *Berget*, and *Estrada*. The sentencing court's use of Dr. Woldt's report did not violate Iannarelli's Fifth Amendment right against self-incrimination, and Iannarelli was not deprived of effective assistance of counsel in violation of the Sixth Amendment.

### 2. Provisional institutionalization under SDCL 23A-27-42

[¶34.] Iannarelli seeks provisional institutionalization under SDCL 23A-27-42. He claims that Attorney Ellyson was ineffective for failing to request a hearing to determine if Iannarelli should receive provisional institutionalization because, in Iannarelli's view, "Dr. Manlove, Dr. Woldt, Mr. Ellyson, and Judge Roeher all believed that Mr. Iannarelli was *presently* suffering from a mental disease or defect for which he was in need of custody for care and treatment." Iannarelli claims that the sentencing court appeared to begin the process leading to a hearing under SDCL 23A-27-42 when it ordered the report of Dr. Woldt but that the court "skipped" the requisite hearing under SDCL 23A-27-44 "without explanation."

[¶35.] SDCL 23A-27-42 provides:

> A defendant *found guilty of an offense*, or the prosecuting attorney may, within ten days after the defendant is found guilty, and prior to the time the defendant is sentenced, file a motion for a hearing on the present mental condition of the defendant if the motion is supported by substantial information indicating that the defendant may presently be suffering from a mental disease or defect for which he is in need of custody for care and treatment in a suitable facility. The court shall grant the motion, or at any time prior to the sentencing of the defendant shall order such a hearing on its own motion, if it is of

> the opinion that there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect for which he is in need of custody for care or treatment in a suitable facility.

(Emphasis added.) But Iannarelli was not found "guilty of an offense." He was found "guilty but mentally ill[.]" For a finding of guilty but mentally ill, SDCL 23A-27-38 controls. It provides:

> If a defendant is found "guilty but mentally ill" or enters that plea and the plea is accepted by the court, the court shall impose any sentence which could be imposed upon a defendant pleading or found guilty of the same charge. If the defendant is sentenced to the state penitentiary, he shall undergo further examination and may be given the treatment that is psychiatrically indicated for his mental illness. If treatment is available, it may be provided through facilities under the jurisdiction of the Department of Social Services. The secretary of corrections may transfer the defendant from the penitentiary to other facilities under the jurisdiction of the Department of Social Services, with the consent of the secretary of social services, and return the defendant to the penitentiary after completion of treatment for the balance of the defendant's sentence.

*Id.*

[¶36.]     Here, before accepting Iannarelli's plea of guilty but mentally ill, the sentencing court held "a hearing on the defendant's mental condition" and concluded that Iannarelli suffered from a mental illness. SDCL 23A-7-16. Under SDCL 23A-27-38, the sentencing court was then authorized to impose a sentence to custody for care and treatment in a suitable facility. The court chose to sentence Iannarelli to the penitentiary, and under SDCL 23A-27-38 any future treatment necessary for Iannarelli's mental illness depends on "further examination" while incarcerated. *Id.*

[¶37.]     Affirmed.

#28151

[¶38.]     GILBERTSON, Chief Justice, and ZINTER, SEVERSON and KERN, Justices, concur.

[¶39.]     JENSEN, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.